M. A. LOMBARD & SON COMPANY, Plaintiff-Appellant, *v.*
PUBLIC BUILDING COMMISSION OF CHICAGO,
Defendant-Appellee.

First District (5th Division)    No. 79-1659

---

Opinion filed August 21, 1981.—Supplemental opinion filed on denial of rehearing November 30, 1981.

James G. O'Donohue, of Chicago, for appellant.

William R. Quinlan, of Chicago (Earl L. Neal and Anne L. Fredd, of counsel), for appellee.

Mr. JUSTICE WILSON delivered the opinion of the court:

M. A. Lombard & Son Company (Lombard) appeals from a judgment of the trial court in favor of the Public Building Commission of Chicago (Commission). Lombard presents two issues for review: (1) that

it is fraudulent for a public body to advertise for bids knowing that the construction plans are incomplete and later make material departures in the plans and specifications; and (2) the "no damage for delay" clause does not absolve a public body under all conditions and circumstances. The pertinent facts follow.

Lombard submitted the lowest bid of $8,794,000 in accordance with certain plans and specifications, and was awarded the general works contract from the Commission on December 14, 1971, for construction of the Archer-Pulaski High School. The contract encompassed the construction of two buildings: building "A" to be completed in 360 days or by December 28, 1972, and building "B" to be completed in 420 days or by March 7, 1973.

Prior to the general contract, there were preliminary contracts awarded to prepare the site for construction. George Lombard, president of Lombard, testified Lombard was aware of the prior contracts as well as the contractual provisions concerning changes in the work and delays.

At a meeting on December 21, 1971, Fred Coleman, the project manager for the joint venture, informed George that Lombard was going to get a notice to proceed on December 28, 1971. George informed him that the job site was not ready and asked that the day of the notice to proceed be extended to some future date. However, the notice to proceed was given on December 28, 1971.

Lombard exhibits indicated that there were numerous charges made throughout the contract period in the drawings and specifications. Lombard contends that Bulletin No. 2, dated March 24, 1972, materially changed the bid drawings with the issuance of construction drawings and additional compensation in the amount of $221,871.40 was authorized. Bulletin No. 8, issued on May 25, 1972, changed the revisions set forth in Bulletin No. 2 and contained 17 pages of revisions. This bulletin authorized extra compensation in the amount of $126,135. Further, on February 8, 1972, the Commission had accepted Lombard's bid of $634,624 for Alternate No. 2, the integrated ceiling in Building "A", in accordance with the bid drawings. Subsequent to this acceptance, numerous changes were made and Lombard was not able to proceed with this work until December 19, 1972. Bulletin No. 40, issued January 31, 1973, required additional work to the ceiling at an added cost of more than $45,000 because of lack of information at the time of installation of the electrical and mechanical work. A stop-work order on all ceilings was issued on January 29, 1973, by the city ventilation department and was not lifted until April 5, 1973. Further, Ernest Burkhardt, field representative for the joint venture architects, testified that the work involved here was new construction, but it became a remodeling job before they were through with it.

Robert Christiansen, executive director of the Commission, testified that bids were sought before the drawings were completed to avoid the increased costs of labor and materials. However, he believed that the changes, compared to the size of the contract, were minor and reasonable from the standpoint of the Commission and were done at a later stage so as not to impede the contractor in his work. Christiansen also indicated that Addenda were issued to bidders which specifically provided that they would be incorporated into the terms of the contract. These revisions would be reflected in the construction drawings which are issued after a contract is awarded.

The Commission introduced pertinent provisions of its contract with Lombard, which are as follows:

"GC-22. Changes in the Work

a. The Owner may make changes in the work of the Contractor by making alterations therein, or by making additions thereto, or by making deductions or omissions therefrom without invalidating the Contract, and without releasing or relieving the Contractor from any guarantee given by him pursuant to the Contract provisions, and without affecting the validity of the guarantee or performance bond, and without relieving or releasing the surety or sureties of said bond. All such work shall be executed under the conditions of the original contract. The Contractor shall submit to Architects 'As Built' or revised drawings clearly showing the revised work, all as required by Section 1—7 of the Technical Specifications.

GC-24. Delays and Extensions of Time

\* \* \*

b. If the Contractor be delayed at any time in the progress of the work by any act or omission of the Owner or the Architects, or of any employee of either, or by any other contractor employed by the Owner, or by changes ordered in the work, or by strikes, lockouts, fire, unusual delay in transportation, unavoidable casualties, or any causes beyond the Contractor's control which would not reasonably be expected to occur in connection with or during performance of the work, or by delay authorized by the Architects pending a decision, or by any cause which the architects and Owner shall decide to justify the delay, the time of completion shall be extended for such reasonable time as the Architects and Owner may decide.

\* \* \*

d. It is further expressly understood and agreed that the Contractor shall not be entitled to any damages or compensation, or be reimbursed for any losses, on account of any delay or delays resulting from any of the aforesaid causes or any other cause whatsoever."

Further, the Commission points out that the contract sets forth the method to be used in determining the amounts of additional compensation to be paid Lombard on account of changes in the work. The payment formula allowed Lombard or the subcontractor performing the work to receive payment for labor and materials, plus 10 percent for overhead and 10 percent for profit. With respect to work performed by its subcontractors, Lombard, as the general contractor, received an additional 10 percent for overhead and profit.

Lombard was granted a time extension of 104 days and 112 days for the "A" and "B" buildings respectively and was paid an additional sum of $2,122,767.70 This action was filed to recover the sum of $1,336,082.58 on account of delay damages.[1]

OPINION

Lombard initially argues that the Commission advertised for bids knowing its construction plans were incomplete and later made material changes in the plans and specifications.

In *Mohr v. City of Chicago* (1904), 114 Ill. App. 283, *aff'd* (1905), 216 Ill. 320, 74 N.E. 1056, the appellate court there stated that "The law clearly contemplates that before bids are advertised for, the city should determine just what work was to be done and the kind, character and quality of materials to be used therein, and should prepare a plan or profile of the

---

[1] Lombard specified the damages as follows:

| | | | |
|---|---|---|---|
| A. | Directed Labor Loss | | $390,300.00 |
| | (Budgeted Labor | $1.207,600.00 | |
| | (Actual Cost | $1,595,917.00 | |
| B. | Directed Cost Charges for Labor F.I.C.A. State and Federal Unemployment Workmen's Compensation General Liability Insurance | | $ 70,254.00 |
| C. | Equipment Rental After Original Contract Completion Date | | $ 74,602.72 |
| D. | Energy Supplied For Buildings After Original Completion Date | | $ 60,166.20 |
| E. | Plus 10% Overhead | | $ 59.532.22 |
| F. | Plus 15% Profit | | $ 98,228.16 |
| G. | Indirect Labor costs | | $420,000.00 |
| H. | Plus 15% Profit | | $ 62,000.00 |
| I. | Estimated Int. on Funds Borrowed | | $100,000.00 |

work, with specifications so definite and sufficiently detailed that anyone experienced in such matters would be able to determine therefrom the particular work to be done in all its details * * *." (114 Ill. App. 283, 289.) Further, Illinois law supports the view that one who contracts to provide labor and materials for a construction project with the reasonable expectation that it will be done within a particular period, and who is thereafter delayed through no fault of his own, but by virtue of the other contracting party, will be entitled to recover for any consequential damages. (*J. F. Edwards Construction v. Illinois State Toll Highway Authority* (1975), 34 Ill. App. 3d 929, 931, 340 N.E.2d 572; Annot., 16 A.L.R. 3d 1252 (1967).) However, potential loss from delay is inherent in any construction project. (*McDaniel v. Ashton-Mardian Co.* (9th Cir. 1966), 357 F.2d 511, 517; *Edwards Construction.*) And if the contract expressly provides for delay or if the right of recovery is expressly limited or precluded, then these provisions will control. (*Edwards Construction.*) All of the language in a written contract is deemed applicable to both parties. (*Consumers Construction Co. v. County of Cook* (1971), 1 Ill. App. 3d 1087, 275 N.E.2d 696.) Where material delays in the completion of a public works contract arise without fault or culpability of the contractor, he has an action against the owner for such damages as reasonably and proximately resulted from the delays, subject to applicable provisions of the contract. (*Underground Construction Co. v. Sanitary District* (1937), 367 Ill. 360, 11 N.E.2d 361.) The amount of damages, if any, that is recoverable, must be fixed with due regard for contract provisions. *Consumers Construction Co.*

■■ In the present case, the delays in the construction of the Archer-Pulaski High School caused Lombard to incur additional expenditures and costs in the performances of its contract work. However, we believe that *Underground Construction Co. v. Sanitary District* and subsequent cases control the determination of delay damages where there are applicable contract provisions. In *Underground Construction Co.* construction work on a bridge was delayed for 10 months due to defendant's lack of funds. The contract provided that no damages would be recoverable on account of days, except for certain expense items particularly specified. Our supreme court upheld the contract provision which specified the measure of damages. See also *Herlihy Mid-Continent Co. v. Sanitary District* (1945), 390 Ill. 160, 60 N.E.2d 882, (delay of two years caused by the district's default); *Unicon Management Corp. v. City of Chicago* (7th Cir. 1968), 404 F.2d 627 (delays caused by incompletion of the site work and City's failure to approve materials); *Consumers Construction Co. v. County of Cook* (delays more than doubled the originally agreed time for the total work), which all support the proposition that a contractor has the right to recover damages sustained by a

delay which has been brought about by the contractee's fault; however, such an award of damages is precluded where the contract provides otherwise. The contract, in this instance, specifically declares that Lombard shall not be entitled to damages on account of delays resulting from any cause whatsoever. It is presumed that the parties deliberately inserted clauses in the contract with specific objectives in mind. *Bowler v. Metropolitan Sanitary District* (1969), 117 Ill. App. 2d 237, 254 N.E.2d 144.

■■ Nor do we believe that Lombard has sufficiently proved that the Commission committed misrepresentation and fraud which would negate the "no damage for delay" provision. "Fraud is never presumed, but must be proved, like any other fact, by clear and convincing evidence. Something more than mere suspicion is required to prove allegations of fraud. * * * [P]ublic officials in the performance of official acts are presumed to act in good faith and with honest motives." *Michuda v. Sanitary District* (1940), 305 Ill. App. 314, 347-48, 27 N.E.2d 582.

■■ In the pending case, the contract contained a specific provision allowing the owner to make changes. Addenda were issued during the bid period, and bidders were notified to incorporate the changes in the contract documents; and where changes were inconsistent with the bid contract documents, the changes governed. Lombard was aware that preliminary contracts were issued prior to its contract and thus must be chargeable at the outset with all that was observable from inspection of site conditions. Further, Lombard's experience with public construction projects should have enabled it to protect itself from risks by either increasing its bid or negotiating the deletion of this contractual provision before executing the agreement with the Commission. Some changes were requested by the Commission's lessee, the Chicago Park District; while other delays were caused by reasons beyond the Commission's control, *i.e.*, inclement weather conditions and three strikes during the contract period. In any event, the Commission bargained for the right to delay with the insertion of the "no damage" provision. Moreover, Lombard was fully compensated for its expenditures due to changes in the work per the contract provisions; was granted time extensions beyond the contract period due to delays and changes, and made a profit on the contract, though less than the anticipated profit. "The dashing of one's expectations is not sufficient reason to set aside the lawful responsibilities of a contract." (*Edward Electric Co. v. Metropolitan Sanitary District* (1973), 16 Ill. App. 3d 521, 526, 306 N.E.2d 733. Damages recoverable in any action for breach of contract are limited to those reasonably foreseeable and within the contemplation of the parties at the time the contract was executed. (*Wasserman v. Rosengarden* (1980), 84 Ill. App. 3d 713, 406 N.E.2d 131.) In this instance, the parties contemplated no damages for

any delay whatsoever. This is the contract of the parties and we must declare the rights of the parties only by the contract, as the language of that instrument dictates. *Underground Construction Co.*

For the foregoing reasons, we affirm the order of the trial court.

Affirmed.

SULLIVAN, P. J., and LORENZ, J., concur.

SUPPLEMENTAL OPINION ON DENIAL OF REHEARING

Mr. JUSTICE WILSON delivered the opinion of the court:

■■ In their petition for rehearing, Lombard argues that our opinion did not consider the issue of whether there is a quantitative or monetary limitation on changes in the work that might be ordered by a public body. It is their contention that because of the numerous changes the Commission made in the contract plans in excess of $2,500, the Commission was required, purusant to section 20 of the Public Building Commission Act (Ill. Rev. Stat. 1969, ch. 85, par. 1050), to advertise for competitive bidding. We reject this contention because the interpretation of this section strains the intent of the statute. Section 20 is entitled "Contract let to lowest responsible bidder—Competitive bidding—Advertisements for bids," and contains the requirements for all contracts to be let for construction, alteration, improvement, repair, enlargement, demolition or removal of any building or other facilities, or for materials or supplies to be furnished, where the amount thereof is in excess of $2,500. Essentially, Lombard asks us to require the Commission to advertise for bids on any changes in plans or specifications in excess of $2,500 on a contract already awarded pursuant to this section. We think this section applies where a contract has not been previously awarded. Where a contract has already been awarded to the lowest bidder (in this instance Lombard) and has a specific provision allowing for changes in the work, to advertise for changes already contemplated in the contract would in effect nullify the contract and negate the process for bidding. As a practical matter, this would hinder any construction projects undertaken by a public body. Changes were contemplated in the contract awarded to Lombard, and Lombard was fully compensated therefor.

The remaining issues Lombard raises for review were fully discussed in the text of the opinion.

Lombard's petition for rehearing is denied.

SULLIVAN, P. J., and LORENZ, J., concur.